AUSAs: Ashley C. Nicolas, Ryan W. Allison

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABEL ROSARIO, ~~and BIANNEURY PENA~~,<br>AK<br>Defendants. | **COMPLAINT**<br><br>Violations of 18 U.S.C. §§ 922(a)(3) and (g)(1), 1326(a) and (b)(2)<br><br>COUNTY OF OFFENSE:<br>NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

**24 MAG 2197**

Amjad Kasaji, being duly sworn, deposes and says that he is a Task Force Officer with the Drug Enforcement Administration (the "DEA"), and charges as follows:

### COUNT ONE
### (Illegal Reentry)

1. On or about June 7, 2024, in the Southern District of New York and elsewhere, ABEL ROSARIO, the defendant, being an alien who has been denied admission, excluded, deported, and removed from the United States, and has departed the United States while an order of exclusion, deportation, and removal was outstanding, entered, and was found in, the United States, after removal that was subsequent to a conviction for commission of an aggravated felony, without having obtained the express consent of the Attorney General of the United States, or the Secretary for the Department of Homeland Security, to reapply for admission.

(Title 18, United States Code, Sections 1326(a) and (b)(2).)

### COUNT TWO
### (Possession and Transportation of a Firearm After a Felony Conviction)

2. On or about June 7, 2024, in the Southern District of New York and elsewhere, ABEL ROSARIO, the defendant, knowing he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly transported a firearm in interstate commerce and possessed a firearm that was in and affecting commerce, to wit, a Glock .40 caliber model 23 handgun, serial number GZH506.

(Title 18, United States Code, Section 922(g)(1).)

### COUNT THREE
### (Unlicensed Interstate Transportation of a Firearm)

3. On or about June 7, 2024, in the Southern District of New York and elsewhere, ABEL ROSARIO and ~~BIANNEURY PENA~~, the defendants, neither being a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms, within the meaning of

AK

Chapter 44, Title 18, United States Code, did willfully and knowingly transport into and receive in the State where he resides firearms purchased and otherwise obtained by ROSARIO and PENA outside that State to wit, ROSARIO and PENA, both New Jersey residents who are not licensed importers, licensed manufacturers, licensed dealers, or licensed collectors of firearms, transferred firearms into and through New Jersey, to wit, a Glock .40 caliber model 23 handgun, serial number GZH506 and an Aero Precision model M4E1 assault rifle, serial m4-0069346.

(Title 18, United States Code, Section 922(a)(3).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a Task Force Officer with the DEA and have been since 2022. I am also a detective with the New York City Police Department (the "NYPD") and have been since 2007. I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and others, and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. On or about April 24, 2024, the Hon. Sarah Netburn, U.S. Magistrate Judge of the Southern District of New York, issued a warrant and order (the "Cellsite Warrant") authorizing the DEA to receive, among other things, prospective cellsite data for a cellphone that the DEA believed to be used by ABEL ROSARIO, the defendant (the "ROSARIO Cellphone").

6. Based on my review of returns from the Cellsite Warrant, my participation in this investigation including my participation in surveillance, and my communications with other law enforcement officers, I am aware of the following information, among other things:

a. On or about May 9, 2024, the returns from the Cellsite Warrant indicated that the ROSARIO Cellphone was traveling from North Carolina to New York. When the ROSARIO Cellphone arrived in New York at approximately 10:00 a.m., law enforcement officers observed ABEL ROSARIO, the defendant, exit a large, interstate passenger bus in the vicinity of 103 Canal Street in Manhattan carrying a weighted bag.[1] An individual law enforcement later identified as BIANNEURY PENA, the defendant, as explained below, exited the bus with ROSARIO.

b. On or about May 19, 2024, at approximately 11:00 p.m., law enforcement officers observed ROSARIO, PENA, and a third unidentified male enter a particular apartment building (the "Newark Apartment Building") in the vicinity of Highland Avenue in Newark, New Jersey. At the time he entered the Newark Apartment Building, ROSARIO was carrying a weighted, dark blue carry-on luggage item (the "Luggage").

---

[1] Law enforcement officers recognized ROSARIO based on their review of known photographs of him, including a photograph retained in ROSARIO's immigration A-File. As described below, ROSARIO was deported by U.S. Immigration and Customs Enforcement on or about July 7, 2020.

2

    c. On or about May 20, 2024, at approximately 1:40 p.m., law enforcement officers conducting surveillance, including myself, observed that an unidentified male ("CC-1") exited the Newark Apartment Building carrying what appeared to be the Luggage, which no longer appeared to be heavily weighted. CC-1 took the Luggage to the side of the Newark Apartment Building and left it in the garbage. Later that day, a Task Force Officer assigned to the DEA recovered the Luggage—which was empty—from the trash outside the Newark Apartment Building.

    d. On or about May 21, 2024, a canine trained in narcotics detection, "Stuey," guided by his trained handler, sniffed the Luggage.[2] Stuey sat down next to the Luggage, indicating a positive alert for narcotics odor. Based on my review of a report prepared by Stuey's handler, I understand that detectable narcotic odor can linger on soft material for days before dissipating.

    e. During the late evening of June 6, 2024, the returns from the Cellsite Warrant indicated that the ROSARIO Cellphone was again traveling from North Carolina to New York. During the early morning of June 7, 2024, the ROSARIO Cellphone stopped in the vicinity of a common departure/arrival point for interstate passenger buses in the vicinity of 27 Forsyth Street in Manhattan. Immediately before the ROSARIO Cellphone stopped at that location in Manhattan,

---

[2] Stuey is a canine handled by Officer Kirk Kouzis of the Port Authority of New York and New Jersey Police (the "Port Authority Police") Canine Unit. Officer Kouzis was appointed to the Port Authority Police Canine Unit on or about August 28, 2022. Among other qualifications, Officer Kouzis received multi-faceted training on contraband-detection canine handling techniques from the Port Authority Police K9 Academy between August 29, 2022, and January 6, 2023.

Stuey has been a certified narcotics-detection canine since December 2, 2022. The course of study for narcotic detection introduced Stuey to the scent of cocaine, heroin, MDMA, and methamphetamine. Once Stuey recognized these odors, he was directed to sit or lay down whenever he came into contact with these substances. Upon sitting or downing, Stuey was rewarded for his recognition of the substance and his subsequent indication to the handler. Stuey was able to find these narcotic substances as a result of the intense training he received. All the "hides" for Stuey, after initial imprinting, were in locations unknown to this handler and canine.

Stuey's training consisted of the team being involved in over 200 searches for the substances described above. A positive indication by Stuey is demonstrated by either sitting or laying down once the odor is detected. Masking agents such as dog food, liquid soap, chicken liver, salmon liver, coffee, tape, shredded uncirculated US currency, shredded circulated US currency, and chicken breast were used to distract Stuey during training. Stuey remained undistracted from his primary duty of finding narcotic substances within his searchable area.

Since December 2022, Stuey has been used in over five dozen sniffs for narcotics and illicit currency. These sniffs have resulted in the seizure of well over $3,000,000 in suspected illicit proceeds and substantial amounts of narcotics, including fentanyl, cocaine, methamphetamine, Xanax, ecstasy, and oxycodone. In those over five dozen sniffs, Stuey did not alert approximately six times. I understand from my communications with other law enforcement officers and my training and experience that Stuey's no-alert incidents do not necessarily suggest that Stuey ever missed an indication of narcotics odor in the field—it is possible that Stuey did not alert in those instances because there was no indication of narcotics present.

the ROSARIO Cellphone connected with cell sites that indicated that it passed through New Jersey and across the Hudson River directly into Manhattan.

  f. At the location on Forsyth Street where the ROSARIO Cellphone stopped, I observed three individuals, including ABEL ROSARIO and BIANNEURY PENA, the defendants, exit a large, interstate passenger bus. I observed ROSARIO, PENA, and the third individual exit the bus together, speak with each other, speak with someone who appeared to be a prospective taxi driver, and walk away together. ROSARIO was in possession of a weighted backpack ("Bag-1") when he exited the bus. PENA was in possession of a weighted duffel bag/suitcase ("Bag-2," and together with Bag-1, the "Bags") when he exited the bus.

  g. I and other law enforcement officers then approached ROSARIO, PENA, and their companion on the street, and we identified ourselves. We detained ROSARIO, PENA, and their companion temporarily in handcuffs on suspicion that the Bags contained narcotics. As a law enforcement officer removed Bag-1 from ROSARIO's possession, ROSARIO stated spontaneously, in substance and in part, "That's not my bag."

  h. Canine Stuey, guided by his handler from the Port Authority Police Canine Unit, sniffed each of Bag-1 and Bag-2 separately. Canine Stuey sat down next to each of Bag-1 and Bag-2, indicating a positive alert for narcotics odor in both Bags.

  i. ROSARIO and PENA were placed under arrest and taken to a law enforcement office. In connection with their arrests, ROSARIO and PENA were both asked for their pedigree information, including their home addresses. Both ROSARIO and PENA provided the same address in Newark, New Jersey.

  7. I know based on my training and experience that narcotics traffickers often traffic narcotics in backpacks and other large bags via interstate passenger bus to New York City in semi-regular patterns. This travel pattern enables narcotics traffickers to re-supply, maintain connections with suppliers, and traffic narcotics and narcotics proceeds. Using interstate passenger buses allows narcotics traffickers to avoid detection by blending into the crowd of other passengers, by attempting to disclaim personal ownership of bags found on a bus with multiple other passengers, and by avoiding being stopped for traffic violations which can result in further investigation of their narcotics trafficking, among other things. Narcotics traffickers often traffic narcotics alone or in small groups of trusted co-conspirators in an effort to reduce the number of people who have knowledge of the trafficking, which reduces the potential for detection by law enforcement or for robberies of their narcotics. ROSARIO and PENA's two trips from North Carolina to New York carrying weighted bags in less than a month is consistent with the narcotics trafficking patterns described above. Their travel pattern was particularly indicative of narcotics trafficking because, in between the two trips from North Carolina to New York, ROSARIO and PENA were both observed at the Newark Apartment Building, where ROSARIO brought a large, weighted bag that Stuey later indicated had an odor of narcotics.

8.      After Canine Stuey indicated the presence of narcotics odor for both of the Bags, the Hon. Stewart D. Aaron, U.S. Magistrate Judge of the Southern District of New York, issued a warrant authorizing the DEA to search the Bags.[3]

   a. Inside Bag-1, law enforcement officers found, among other things, a Glock .40 caliber model 23 handgun, serial number GZH506, with (i) a loaded standard magazine, (ii) a loaded extended magazine, (iii) a loaded drum-style magazine, and (iv) approximately sixty-five rounds of .40 caliber ammunition.

 

   b. Inside Bag-2, law enforcement officers found, among other things, an Aero Precision model M4E1 assault rifle, serial number m4-0069346, with a magazine:



---

[3] Law enforcement sought this warrant from Judge Aaron out of an abundance of caution. Pursuant to NYPD policy, law enforcement officers also were required to conduct an inventory search and search incident to arrest of the Bag because ROSARIO and PENA had been placed under arrest.

9. From my communications with other law enforcement officers and my review of records maintained by the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE") and of criminal records issued by the State of Delaware regarding ABEL ROSARIO, the defendant, I have learned, among other things, the following:

    a. ABEL ROSARIO, the defendant, is a native and citizen of the Dominican Republic. He is not, and has never been, a citizen of the United States.

    b. On or about February 5, 2019, ROSARIO was arrested by the Delaware State Police, Troop 9, and charged with various narcotics offenses, resisting arrest, tampering with physical evidence, and second-degree conspiracy, all in violation of Delaware law.

    c. On or about February 22, 2019, ICE served ROSARIO with a notice alleging that he illegally entered the United States at an unknown location without inspection by any United States immigration authority.

    d. On or about September 24, 2019, ROSARIO, who was then using the alias "Juan Diaz," pled guilty in Delaware Superior Court, New Castle County, to drug dealing, in violation of 16 Del. § 4754—a felony offense. That same day, ROSARIO was adjudged guilty and sentenced to eight years' incarceration, suspended after thirty days to eighteen months in Level Three custody.

    e. On or about October 28, 2019, members of ICE who were conducting routine criminal apprehension program operations at a correctional facility in Delaware identified "Juan Diaz" as ABEL ROSARIO, the defendant, by scanning his fingerprints through an automated government biometric system.

    f. On or about June 29, 2020, after complete immigration proceedings, an immigration judge ordered ROSARIO deported pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. This order further prohibited ROSARIO from entering, attempting to enter, or being in the United States for a period of ten years from the date of his departure.

    g. On or about July 7, 2020, ROSARIO was removed from the United States. Prior to his removal, ICE took a photograph of ROSARIO's face and another fingerprint of his right index finger.

    h. A search of all relevant Department of Homeland Security indices has confirmed that, following his removal from the United States on or about July 7, 2020, ROSARIO never obtained the express consent of the Attorney General of the United States, or the Secretary for the Department of Homeland Security, to reapply for admission to the United States.

10. After his arrest on or about June 7, 2024, I and other law enforcement officers ran ROSARIO's fingerprints through law enforcement databases and confirmed that the same ROSARIO I and other law enforcement officers arrested is the same ROSARIO who was removed by ICE on or about July 7, 2020, as described above.

11. A thorough search of a database maintained by the Bureau of Alcohol, Tobacco, Firearms and Explosives shows that neither ABEL ROSARIO nor BIANNEURY PENA, the

defendants, is a licensed importer, licensed manufacturer, licensed dealer, or licensed collector of firearms.

WHEREFORE, I respectfully request that ABEL ROSARIO and ~~BIANNEURY PENA~~ AK, the defendants, be imprisoned or bailed, as the case may be.

_____
AMJAD KASAJI
Task Force Officer
Drug Enforcement Administration

Sworn to before me
this 7th day of June, 2024.

_____
THE HONORABLE STEWART D. AARON
United States Magistrate Judge
Southern District of New York

7